```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION
                           HOUSTON, TEXAS
 3                    DECEMBER 2, 2008, 9:00 A.M.

 4   INGRID FISHER, ET AL       . CIVIL ACTION NUMBER:
     VERSUS                     . H-O5-1731
 5   HALLIBURTON, ET AL         .
                                .
 6   LA TIMES, INTERESTED PARTY .
                                .
 7   KEVIN SMITH-IDOL           . CIVIL ACTION NUMBER:
     VERSUS                     . H-06-1168
 8   HALLIBURTON, ET AL         .
                                .
 9   WEBCRUITER, DEFENDANT      .
                                .
10   REGINALD CECIL LANE, ET AL . CIVIL ACTION NUMBER:
     VERSUS                     . H-06-1971
11   HALLIBURTON, ET AL         .

12   . . . . . . . . . . . . . .

13             TRANSCRIPT OF IN CHAMBERS MOTION HEARING
               BEFORE THE HONORABLE GRAY H. MILLER
14                  UNITED STATES DISTRICT JUDGE

15

16   APPEARANCES:   (All participants appearing by telephone)

17   FOR THE PLAINTIFFS:

18        Tobias Anthony Cole and Mark O. Midani
          MIDANI HINKLE COLE, LLP
19        10497 Town & Country Way
          Suite 530
20        Houston, Texas  77024

21
          T. Scott Allen, Jr.
22        CRUSE, SCOTT, HENDERSON & ALLEN, LLP
          2777 Allen Parkway, Seventh Floor
23        Houston, Texas  77019

24

25
```

1 **APPEARANCES — CONTINUED**

2

3 ALSO FOR THE PLAINTIFFS:

4      Kenneth T. Fibich and Sara J. Fendia
       FIBICH HAMPTON
5      1401 McKinney
       Suite 1800
6      Houston, Texas   77010

7      David Michael Gunn
       BECK REDDEN SECREST, LLP
8      1221 McKinney
       Suite 4500
9      Houston, Texas   77010

10     Raymond R. Lopez and Christina Anne Fountain
       LOPEZ McHUGH, LLP
11     100 Bayview Circle
       Suite 5600
12     Newport Beach, California   92660

13 FOR THE LA TIMES (INTERESTED PARTY):

14     Charles L. Babcock
       JACKSON WALKER, LLP
15     1401 McKinney Street
       Suite 1900
16     Houston, Texas   77010

17

18 FOR THE DEFENDANT HALLIBURTON:

19     Robert Bruce Hurley, Jr. Christie Lynne Cardon
       and Robert Ellison Meadows
20     KING & SPALDING, LLP
       1100 Louisiana
21     Suite 4000
       Houston, Texas   77002

22

23     David Kasanow and Raymond B. Biagini
       McKENNA LONG & ALDRIDGE
24     1900 K Street NW
       Suite 100
25     Washington, DC   20006

1                          **APPEARANCES − CONTINUED**

2

3    FOR THE DEFENDANT WEBCRUITER:

4         Margaret Brenner
          BRACEWELL GIULIANI, LLP
5         711 Louisiana
          Suite 2300
6         Houston, Texas  77002

7    FOR THE WITNESS KEITH RICHARDS:

8         Michael Warnecke and Brian W. McKay
          HAYNES & BOONE
9         2323 Victory Avenue
          Suite 700
10        Dallas, Texas  75219

11   ALSO PRESENT:

12        Laurel Calkins

13

14   OFFICIAL COURT REPORTER:

15        Mayra Malone, CSR, RMR, CRR
          U.S. Courthouse
16        515 Rusk, Room 8016
          Houston, Texas  77002
17        713-250-5787

18   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
19                              − − − − −

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2          THE COURT:  Good morning.  I have a court reporter
 3   here in chambers so I think we have a list of all of the
 4   attorneys who are on the call, but I think it would be useful
 5   to go ahead and make kind of a roll call through, starting with
 6   the attorneys for the plaintiffs, Mr. Allen.
 7          MR. ALLEN:  Yes, Judge Miller.  This is Scott Allen.
 8   I believe we have on the conference, since we are separated
 9   today, myself, Tommy Fibich, Ramon Lopez, Christina Fountain,
10   Sara Fendia, David Gunn.  And that's in the Fisher and Lane
11   cases.
12          MR. COLE:  This is Toby Cole, in the Smith-Idol case.
13          MR. MIDANI:  Mark Midani in the Smith-Idol case.
14          THE COURT:  All right.  I think that covers all the
15   attorneys for the plaintiffs.  The Halliburton lawyers?
16          MR. HURLEY:  Judge, this is Bruce Hurley.  And here
17   with me at King Spalding, I have Robert Meadows and Christie
18   Cardon.
19          THE COURT:  All right.
20          MR. KASANOW:  This is David Kasanow in Washington and
21   with me is Megan Kinsey-Smith.
22          THE COURT:  Is that Kinsey-Smith?
23          MR. KASANOW:  Yes, sir.
24          THE COURT:  Okay.  Thanks.  I had it misspelled here.
25   Let's see.
```

1          UNIDENTIFIED SPEAKER:  There are also counsel for

2     Keith Richards on the line.

3          THE COURT:  Right.  Is that Mr. McKay?

4          MR. WARNECKE:  Mike Warnecke and Brian McKay.

5          MR. DAVIDSON:  Your Honor, this is Scott Allen.  I

6     think you have a reporter on the line.

7          MS. CALKINS:  Laurel Calkins, *Bloomberg News*.

8          THE COURT:  Laurel Calkins, *Bloomberg News*?

9          MS. CALKINS:  Yes.

10         THE COURT:  I'm sorry.  I talked over you.  Say that

11    again.

12         MS. BRENNER:  Peggy Brenner, Bracewell Giuliani.  I

13    represent Webrecruiter.

14         THE COURT:  Yes, of course.

15         MS. BRENNER:  Thank you, sir.

16         THE COURT:  All right.  Good morning to everyone.  I

17    have looked at the letter that Mr. Allen sent me on the 25th

18    and then Mr. Hurley's letter of the 26th as far as the topics

19    to be discussed.  Who is going to be doing the majority of the

20    talking for plaintiffs?

21         MR. FIBICH:  Your Honor, this is Tommy Fibich.  I

22    will.

23         THE COURT:  And for the defendants, is it Mr. Hurley?

24         MR. HURLEY:  I will be doing some, Judge, and I

25    suspect Mr. Meadows and maybe even Mr. Kasanow on an isolated

1    issue or two.

2            THE COURT:  Okay.  Why don't we start with Mr. Allen's

3    letter and topic number one?

4            MR. FIBICH:  Judge, Tommy Fibich for the record on

5    behalf of the -- I will speak for the Lane and Fisher

6    plaintiffs.  You have asked us to look into the applicability

7    of the Texas responsible third party rule and its application

8    to the case before you.  And I think that there is a split of

9    authority on whether it is a substantive or procedural

10   mechanism; however, I think the greater weight of the authority

11   is that it is substantive law.  And in the appropriate case, it

12   does have application to the matters that are before the Court.

13            However, as I pointed out in my brief, I think

14   that there is additional analysis which must be made, first of

15   which is what would be the applicable law in that we have 15 or

16   17 different states from which the facts of this case may arise

17   by virtue of the plaintiffs' residence and where they were

18   employed and that sort of thing.  So the first analysis I think

19   the Court would have to make is which cases does it apply to

20   before we can determine how it would apply.

21            In that regard, I will tell the Court that there

22   are at least three cases that are inescapably Texas law, so for

23   the purposes of the analysis that we feel the Court needs to

24   make and the parties need to make, we should go ahead and

25   presume that it is going to apply in at least three of those

1       cases so that we can see how it is going to work.

2                    Now, the concern that I have, as I raised the

3       last time we were before the Court, is that the Texas rule

4       allows the designation to be done up to 60 days prior to the

5       date of trial.  The purpose for that provision in the statute

6       was to allow the parties to do discovery and investigation to

7       determine whether or not there was a responsible third party

8       that could be added.  That would apply to a lot of cases but is

9       certainly not applicable to this case.

10                   This incident happened nearly four and a half,

11      five years ago.  The defendants have had investigations.  They

12      more so than anybody would know if there is a responsible third

13      party.  So what we are asking the Court to do is to, under the

14      rule -- Federal Rule of Procedure 16, move up that date to the

15      designation of a responsible third party should they choose to

16      do so.

17                   We have on-going discovery.  The discovery is

18      going to change and take on a new dimension, a different

19      dimension if, in fact, they do designate a responsible third

20      party.  I think procedurally where we are is that we need a

21      deadline.  I would urge the Court to make it within the next

22      two weeks, if not sooner, for them to designate a responsible

23      third party.  At that point in time we have analyzed their

24      ability and the applicability of who we believe the potential

25      third parties are.

1    We do not feel that there is one that can meet

2  the dictates of the statute, but in terms of procedure, I think

3  that they need to designate a responsible third party.

4    At that point in time, we will object to it and

5  have a hearing, and you can hear the arguments as to whether or

6  not any third party is appropriate in this case.

7    Once again, I think that they know who the

8  responsible third party is.  If they want to name one, I think

9  it is more of a tactical decision as to whether they do so or

10  not.  I'm not here to speak for them, but I am urging the Court

11  to give us a date so that we know who the responsible third

12  parties will be because there is going to be briefing after

13  that designation is made, if one is made, and if they are going

14  to have to have a hearing on it, then we need that designation

15  made and your determination before we undergo the additional

16  discovery that we are currently setting up.

17    THE COURT:  All right.  Thank you, Mr. Fibich.

18    Mr. Hurley, are you going to handle that?

19    MR. HURLEY:  I will handle a part of it Judge and

20  would encourage my colleagues to join in, as necessary.  But,

21  for the record, this is Bruce Hurley from King & Spalding.

22  And, Judge, I think where we are is the Court had asked us to

23  brief this for this particular status conference to put it in

24  the Court's queue for consideration.

25    I do believe that both parties have fully briefed

1    the matter of whether or not it is appropriate to allow a

2    responsible third party addition, and I think now where we are

3    is the timing on when we need to do it.  And while I do believe

4    that the Texas statute that does apply would allow us to do it

5    as late as 60 days before trial, I don't think that is

6    reasonable in this case and wouldn't ask the Court to put us on

7    that schedule.  I do think two weeks from today is an arbitrary

8    deadline and unnecessary.  But I do think that some time in the

9    near future, perhaps before the next status conference, we

10   have -- or as of the next status conference we have is

11   certainly a workable deadline for us to make a filing.

12          THE COURT:  Mr. Hurley, I think the next status

13   conference that we have scheduled would be early January.  Are

14   you proposing that as a date?

15          MR. HURLEY:  I think we can do it by then, Your Honor,

16   if mid January might be easier, but I think that we ought to do

17   it at least by mid January.

18          MR. ALLEN:  Your Honor, Scott Allen.  May I add one

19   thing on that?

20          THE COURT:  Sure.

21          MR. ALLEN:  We may have a deposition of Craig

22   Peterson, who is the LOGCAP general manager, vice president,

23   contingency of homeland operations, the man that was simply in

24   charge of everything.  This is on the agenda for later in early

25   January.

1          I would like the designation -- or for you to

2     consider the designation of a responsible third party before he

3     is deposed by the defendant.  That would be my thought.

4          MR. FIBICH:  Your Honor, Tommy Fibich.  Let me weigh

5     in, if I may, on this subject.

6          First of all, as I indicated, the statute was

7     originally designed so that if there was discovery that was

8     uncovered, someone that no one knew about.  And I remember the

9     testimony before the commissioner was considering this rule

10    change.  They said, What if we have an explosion, you go in and

11    do discovery and at the last minute, you discover that the

12    manufacturer of a valve had produced the defective valve?  They

13    should be allowed at that point in time to name the responsible

14    third party.

15         That is not what we have here.  This incident, as

16    you know, was four and a half years ago.  And the problem that

17    we have is that if they come in and the Court finds that they

18    are entitled to submit a blank on authority that we haven't

19    named, then we need to have discovery done on that.  In order

20    for us to do it in a proper way without burdening the company

21    by redoing depositions, we need this ruling sooner rather than

22    later.

23         As I indicated to you, we are going to have

24    objections to whoever they name.  You are going to have a

25    hearing and briefing on that and then a ruling thereafter.  So

1   to wait until January actually puts it off much longer than you

2   might otherwise anticipate.

3                I just don't think it is an issue that deserves

4   more time.  There is not going to be discovery of some

5   additional third party.  They either have one or they don't.

6   They know who it is.  The only decision is to whether they want

7   to do it or not.

8           THE COURT:  What do you say to that, Mr. Hurley?

9           MR. HURLEY:  Judge, one reply to that with respect to

10  Mr. Allen's request about the Peterson deposition.  I think

11  this will come up later.  We have been using our best efforts

12  to try to get that deposition on the books and have been unable

13  to reach a date which all the plaintiffs' lawyers can attend.

14  But I will say this, that in the two days of deposition

15  testimony that Mr. Peterson has already given, Mr. Allen

16  questioned Mr. Peterson about potential responsibility of the

17  government and the Army specifically.  And I don't know how the

18  pendency of Mr. Peterson's continuation of his deposition has

19  anything to do with the timing of this responsible third party

20  designation.

21          THE COURT:  All right.  Here is what we are -- I think

22  that January is a -- in view of the holidays and I understand

23  this case has been going on a long time, but I'm going to set

24  January 5 as the date by which responsible third parties need

25  to be named, January 5, 2009.

1          I think the difference at this stage of the year

2    between two weeks and four weeks is not really that

3    significant.

4          I do believe that the defendants -- if you can do

5    it earlier, Mr. Hurley, that would be fine, but you have until

6    January 5th to designate responsible third parties.

7          MR. ALLEN:  Thank you, Your Honor.

8          THE COURT:  Let's see.  The next item on the agenda is

9    the briefing schedule on the investigative privilege, and I

10   understand the plaintiffs' brief is due on December 9.

11         MR. ALLEN:  Yes, sir.  That's all you needed to know.

12   This is Scott Allen.  We are just updating you on when it is

13   due because really that is all you needed to know.

14         THE COURT:  All right.  We have got it on the books.

15         MR. HURLEY:  Judge, on that point -- and I don't mean

16   to belabor it -- this is Bruce Hurley again.

17         I think that when we met and set this out and

18   agreed to the scheduling on that briefing issue, the Court said

19   that after the plaintiffs filed their briefing, you would

20   consider rebuttal.

21         THE COURT:  Yes.

22         MR. HURLEY:  And I would just like to keep that option

23   open pending what we see from the other side.

24         THE COURT:  All right.  That's fine.

25         MR. HURLEY:  Thank you.

1          THE COURT:  Let's see.  Item number three?  I'm not

2     sure?

3          MR. FIBICH:  This is Tommy Fibich.  Quite frankly,

4     this case is not unlike a lot of other cases.  We have our

5     skirmishes and differences of opinion but, by and large, I

6     think that we are doing well moving it along.

7          The one issue that we continue to face, and that

8     is hypothetically speaking objections on behalf of the

9     Halliburton lawyers.  The purpose for the rule of objection is

10    to preserve your right to contest the admissibility of evidence

11    at the time of trial.  The word "objection" suffices.

12          What we invariably get into is if the lawyer

13    questioning the witness does not feel the question has been

14    answered sufficiently, or responsively, he asks the question

15    again.  The defense lawyer says, "asked and answered," and then

16    the witness gives us the same answer right back.

17          In the course of expeditiously finishing the

18    discovery, we simply ask the Court to help us in that the

19    defense should be allowed only to say "objection" to questions

20    that they feel lead to the -- or do not lead to the

21    admissibility of evidence.

22          THE COURT:  Who wants to respond to that?

23          MR. HURLEY:  Judge, if I can start -- this is Bruce

24    Hurley again.  To begin with, Judge, I have an honest

25    disagreement with Mr. Fibich and the plaintiffs' lawyers about

1    whether or not a simple use of the word "objection" properly

2    preserves my objection.

3              Judge Miller, you realize that when we were in

4    your chambers, I had my own particular issue with this in the

5    issue of whether or not questions were invading the

6    attorney-work product privilege and the attorney-client

7    privilege.

8              THE COURT:  Right.

9              MR. HURLEY:  During Ms. Stagg's deposition.  And while

10   maybe being overly conservative, I was trying to be protective

11   of the witness.  I don't think -- and this could just be me

12   thinking out loud -- that that is what they are talking about.

13   But I do think, Judge, that many times the word "objection"

14   doesn't protect the record and moreover does not protect the

15   witness, which is part of the responsibility of lawyers who are

16   presenting these witnesses.  And I just think, Judge, that this

17   issue should be viewed in the overall broader context of what

18   is going on in these depositions.

19              I will just give the Court a couple examples.

20   But, first of all, these depositions are highly emotional, very

21   charged, very intense.  They are attended by, as is well their

22   right, many of the plaintiffs, the parties in this case.  We

23   are told that there could be as many as nine of the plaintiffs

24   at the upcoming deposition of Keith Richards.  And there are

25   repetitive questions asked.  There are very argumentative

1    questions asked.  There are accusatory statements made.  There

2    are attempts made by the lawyers to engage the witness with the

3    plaintiffs, asking the witness, for instance, to introduce

4    himself to the plaintiffs on the record, to look at the

5    plaintiffs on the record.  And it is the overall broader

6    context of what is going on in these depositions that needs to

7    be evaluated when determining whether or not simply saying

8    "objection" protects the witness or preserves the record.

9        MR. FIBICH:  Your Honor, Tommy Fibich, if I may reply

10    to that.

11        THE COURT:  Yes.

12        MR. FIBICH:  If there is a question that is asked that

13    is inappropriate, they can tell the witness not to answer and

14    we won't get an answer to the question.  And then if we feel

15    the question was improperly impeded by the instruction not to

16    answer, we will take that up with the Court.  And that is

17    totally appropriate.

18            If they want to tell the witness not to answer

19    any question, that is their right and if they are right, you

20    can so tell us.

21            What we are concerned about are the real

22    questions that go to the heart of this matter in which they are

23    speaking objections.  We are willing to state on the record

24    that the term "objection" preserves their objection to the

25    question.

1          MR. ALLEN:  Your Honor, Scott Allen.  I didn't intend

2     for this hearing on this matter to get this personal.  I would

3     say, and I would remind the Court, that we were in the Court's

4     presence for the deposition of Ms. Stagg.  We were there the

5     whole day.  Didn't have one problem.  I don't feel it is

6     necessary to respond.  I hope Mr. Hurley would agree that this

7     case has been conducted by and large professionally.  That is

8     exactly what Mr. Fibich started out to say.

9          All we are asking for is if they have an

10     objection to the question, just to say the word "objection,"

11     and we will agree that that preserves any objection.

12          Also, I saw where Mr. Hurley in response to that,

13     he said an objection -- who is going to object to the

14     deposition is on the agenda.

15          I want the Court to understand, because I think

16     we're discussing this and we're distorting the process because,

17     in fact, I think the depositions -- we have never needed to

18     come to the Court or call the Court -- is being taken out of

19     context.

20          The Halliburton defendants have only one client

21     so we believe an objection for one should suffice for an

22     objection for all, for both sides, for our side and for their

23     side.  The problem is we have different lawyers with different

24     cases, so if I'm asking questions or Mr. Fibich is asking

25     questions in the Lane case, for example, he thought a

1    question -- an answer was responsive and we in the Fisher case

2    did not, and I would say, "Objection; nonresponsive."  I may

3    have a duty to object where he didn't.  I think to start

4    getting into any type of personal attacks is not even necessary

5    now.

6         We just need a rule:  Objection for one is good

7    for all, and the word "objection" will preserve all objections,

8    as opposed to getting off track.

9         MR. WARNECKE:  Your Honor, this is Mike Warnecke for

10   Keith Richards.  May I respond?

11        THE COURT:  Yes, sir.

12        MR. WARNECKE:  We're concerned.  We are a nonparty.

13   Keith Richards is a former employee of KBR.  He's no longer

14   employed.  And we are concerned about our ability to do our job

15   for our client in this deposition.

16        There have been numerous attempts in these

17   depositions to harass and demean witnesses, and we feel that we

18   need the full protection of the federal rules on our side to

19   assist in this deposition process.  And while the parties may

20   agree to whatever stipulation they want to agree to, I don't

21   feel that that properly protects Mr. Richards, especially given

22   our very serious concerns about whatever collateral uses are

23   going to come from these depositions.  It is certainly obvious

24   by the attendance of a news reporter on this call there is

25   intense media interest and there have been prior leaks of my

1   client's e-mails to the press that have showed up on this *LA*
2   *Times* articles.  And we are very concerned about how this
3   process is going to play out and don't think that any sort of
4   stipulation between the parties in this one particular case is
5   going to adequately allow us to protect our client.
6           THE COURT:  Well, here is the thing:  Everybody knows
7   the rules.  And I think with respect to the depositions, I am
8   prepared to say that "objection" is sufficient to -- if the
9   plaintiffs are willing to stipulate to this, that it is fine
10  with me, that the word "objection" would preserve all
11  objections that might be had to the question, and that one
12  objection by one of the parties is sufficient for all of the
13  parties.  In other words, everybody doesn't have to go around
14  the table and say "objection."  It will suffice for everybody.
15          With respect to protecting your client, I'm going
16  to leave that in your hands.  You all are professionals.  I'm
17  not going to get into micromanaging the depositions.  If there
18  is a problem during a deposition, as I've said before, you can
19  call and I will get on the phone and we will work it out.
20          I do take Mr. Allen's point that nobody has
21  called so far, so I'm taking that as good news.  And, if
22  necessary, the depositions could be taken down here.
23          MR. MEADOWS:  Judge, this is Bobby Meadows.  If I
24  could speak to this point, and it may not affect your ruling on
25  this, but I think it is important for us and we need to be

1    aware of what the rules require, of what the rules allow.

2            This notion of objection as a term preserving the

3    full scope of objections with regard to leading, or however it

4    is phrased, really I think is in front of us because of what

5    has happened with the Texas rules that were rewritten sometime

6    ago to deal with abusive examinations of witnesses and

7    basically speaking objections by lawyers.  But there is an

8    important distinction in the rule in terms of how you can

9    control objections.

10           The term "objection" having it embrace all

11   aspects of objections in terms of leading or form or whatever

12   was put in place to address speaking objections.  But at the

13   same time, when this rule was rewritten, there was recognition

14   that there are times when the lawyer doing the questioning can

15   be overly abusive and be argumentative and handle the witness

16   in a way that just stating the word "objection" is not

17   protective of that.

18           So the rules were also changed, unlike the

19   federal rules, to allow a lawyer to instruct the witness not to

20   answer, not only when it is to protect the privilege, but when

21   it is necessary to protect a witness from abusive questioning,

22   or from which an answer would be misleading or secure a ruling

23   pursuant to Paragraph G.

24           Under the federal rules you can only instruct a

25   witness not to answer if it is done to protect the privilege.

1   But the instruction not to answer under the state rules where

2   the term "objection" is permitted, the way we are talking about

3   it, is much more expansive because it is allowed to protect the

4   witness from abusive examination by a lawyer.

5           Now if we are going to impose the term

6   "objection" as -- and require lawyers to use the word

7   "objection" and not say anything more, then I think we need to

8   also request of the Court and perhaps an agreement by

9   plaintiffs' counsel that we can -- a witness can be instructed

10  not to answer not simply when a privilege is at risk but when

11  the examination is abusive and could call for an answer that is

12  misleading as defined under Rule 199.5 of the Texas Rules of

13  Civil Procedure.

14      MR. FIBICH:  Judge, Tommy Fibich.  I feel like I need

15  to apologize to the Court for having to get into discovery

16  issues such as this.  It is not the way that I like to use your

17  time or mine, but we are where we are.

18          If the defendants feel that a question is abusive

19  or leads to some answer that can't be appropriately answered,

20  then they can instruct the witness not to answer.  If we feel

21  that they have abused that process, we will be back down in

22  front of you to suggest that that witness should be made to

23  answer.  We will not raise some sort of procedural problem that

24  they did not have the right to do it at the time of deposition.

25  I think that takes care of it, Your Honor.

1          I think the important thing was to understand the

2  difference in the scope and preface of the two rules.

3          Under the federal rules, we are obligated to

4  state an objection in precise non-argumentative terms, and the

5  word "objection" wouldn't accomplish that.

6          MR. ALLEN:  Your Honor, we agree with what Mr. Meadows

7  just said on that.

8          THE COURT REPORTER:  Who is speaking?

9          THE COURT:  That's Mr. Allen.

10          MR. ALLEN:  We agree, for the record, that they have

11  done that on occasion.  I don't think this is -- we agree with

12  what Mr. Meadows just said.

13          THE COURT:  I think we have got agreement on that

14  then.

15          MR. HURLEY:  Judge, this is Bruce Hurley.  I think to

16  the same point, Mr. Allen said that the Halliburton defendant,

17  as he said, is just one defendant, and one objection is good

18  for all.

19          The truth of the matter is I believe there are at

20  least three defendants that we represent, but we have been, as

21  best we can with very few exceptions, allowing one lawyer on

22  our side to make an objection that is good for all.  One

23  problem we have gotten into is that multiple lawyers or at

24  least two on occasions for the Fisher plaintiffs, for example,

25  will all make objections to questions and --

 1          MR. ALLEN:  Your Honor, this is Scott Allen.  That

 2    happened on one occasion.  I was questioning the witness and

 3    other people objected.  I took care of the problem.  We

 4    apologize.  They need to call the Court if it happens again.  I

 5    remember when that happened.  I was questioning the witness.  I

 6    agree that it happened.  Other people objected.  I apologize on

 7    the phone, if necessary.  We agree one objection is good for

 8    all.

 9          The only thing I would point out, there are two

10    cases, three cases.  And so if the Fisher plaintiffs -- let me

11    just say this:  If the Lane plaintiffs don't object, I may

12    decide to object.  That's the only thing.

13          We agree with what Mr. Hurley is saying.  We

14    just -- all we want to hear is the word "objection."  No

15    speaking objection.  We agree with what he is saying.

16          THE COURT:  Okay.  I think we are clear.  If not, you

17    can come back.

18          MR. ALLEN:  Yes, sir.

19          MR. FIBICH:  Your Honor?

20          THE COURT:  Yes, sir?

21          MR. FIBICH:  Tommy Fibich, if we can move to number

22    four?

23          THE COURT:  Right.

24          MR. FIBICH:  That is the protocol for the deposition

25    of Keith Richards who is scheduled to be deposed beginning this

1   Thursday, and his lawyer is also on the phone.  And he was the

2   project manager of the Theater Transportation Mission, which I

3   think has been characterized as the largest trucking company in

4   the world.  But in any event, the problem that we now face that

5   we do need your help on is initially it was agreed that we

6   would have two seven-hour days to depose Mr. Richards.

7           The defendants came back to us very recently and

8   said that they needed two days to do a direct examination.

9           UNIDENTIFIED SPEAKER:  Two hours.

10          MR. FIBICH:  I'm sorry.  Two hours to do a direct

11  examination.  And we have agreed to allocate the time

12  originally set aside to us for them to do that, and that is

13  fine.  The issue that we now have is we don't want to go to the

14  trouble of commencing the deposition and not having the right

15  to reserve some of our time to cross-examine their witness

16  after they do a direct examination.

17          At the time this deposition was set up, we viewed

18  it simply as a discovery deposition so we could go find out

19  everything we could find out that we needed to find out from

20  this witness.  Now it appears that there is at least some

21  consideration on their side to call in Mr. Richards by

22  deposition as opposed to live.  We want to preserve some of our

23  time so that we can cross-examine him on matters that may be

24  arisen on his direct examination.

25          Quite simply, we represent the families of people

1  that were killed and they represent the company.  They know a

2  whole lot more about what happened than we do.  We do not know

3  what they are going to bring out in direct examination, and we

4  have to reserve some of our time to contest by

5  cross-examination the direct testimony that they elicit from

6  this witness.

7       MR. WARNECKE:  Your Honor, this is Mike Warnecke for

8  Keith Richards.  I think the issue goes beyond just the

9  allocation of time and also goes to the amount of time for this

10  deposition.

11       Back in 2006, the Court and the parties were

12  essentially all in agreement that 10 hours would be enough time

13  for the Fisher and Lane cases.  And during that hearing, Scott

14  Allen said, quote, I think a day with this witness on my

15  side -- on my behalf is imminently fair, and I'm asking for a

16  day for my side."

17       The Court basically said that -- and then what

18  happened was the defendants for Lane and the other defendants

19  asked for time, and the Court basically said seven hours was

20  the time limit unless counsel for Richards would agree to more

21  time.  Essentially, the Court said, "If you can convince

22  Mr. Richards' lawyer to expand it to 10 hours, I think that

23  would probably satisfy everybody.  But barring that agreement,

24  unless you, Scott Allen, convince me otherwise, I think we are

25  going to stick with the seven."

1          And the Court later went on to say that the time

2     should be evenly split unless the parties agreed otherwise.

3     Keith Richards recently agreed to expand the time beyond the

4     Court's suggested 10 hours to 14 hours and ordered the

5     deposition cover all three cases, Fisher, Lane and Smith-Idol,

6     so that Keith could get this over with and get on with his life

7     and stop being distracted from his current duties.

8          I thought that was the agreement, but now last

9     week, Smith-Idol says that they are not showing up at this

10    deposition and are requesting -- or at least reserving the

11    right to take Keith's deposition in their own case down the

12    line.

13         I think that the extra four hours that we added

14    when we went from 10 to 14 to cover Smith-Idol is imminently

15    fair, to quote Mr. Allen, and is more than Smith-Idol would be

16    entitled to in a separate 10-hour deposition split 50/50.

17         I would say that if you take 14 hours and you

18    take away the two that the defendants have asked for, that

19    leaves 12.  If you give eight to Fisher Lane, which is more

20    than Scott requested in 2006 and more than he said was

21    imminently fair and frankly more than he would be entitled to

22    under two separate depositions of seven hours each and then you

23    give four hours to Smith-Idol, I think everybody should be

24    adequately covered, more than they would be allowed under the

25    rules, except for defendant, and, again, I think it is

1    imminently fair.

2              So the problem we are stuck with now is the

3    Fisher and Lane plaintiffs are trying to take the full 14 minus

4    two hours and then we are going to be back again for a third

5    day of deposition for Smith-Idol, and that is not what we

6    agreed to.

7              MR. ALLEN:  Judge, this is Scott Allen.  That is not

8    at all what happened.  But here is what I have told Mr. Hurley

9    on the phone.  This all arose the Friday before Thanksgiving.

10    If necessary, I'm willing to draw my notes and in order to

11    protect my clients come down and have a full evidentiary

12    hearing on what happened.  We had an agreement.  We have had a

13    meet and confer since July with counsel on the other side.  We

14    have had this deposition -- I asked for it in August.  It was

15    set in September.  None of these issues arose until the Friday

16    before Thanksgiving.  We have learned since the time of the

17    original request for the deposition -- and it is in the

18    investigation briefs that were filed in the log and the

19    privilege log matters that are before the Court -- that

20    Mr. Richards -- it's all over the privilege log.  In the

21    affidavit of Sharon Stagg that was submitted to the Court, they

22    are protecting e-mail correspondence between counsel for the

23    defendants and Mr. Richards under the attorney-client

24    privilege.  The affidavit actually swears that Mr. Richards was

25    acting under the behest and control of the defendants.  That's

1  what the affidavit swears in paragraph 45, and again I believe

2  in paragraph 58 of the Stagg affidavit.

3          We have an agreement in a September 23rd letter

4  we filed with the Court.  They also interviewed -- they being

5  the defendants -- on multiple occasions Mr. Richards.  We don't

6  have the notes of those interviews.  They refused to turn them

7  over.  That is the whole issue of the investigation brief.

8          This Mr. Richards -- we have learned that

9  Mr. Peterson's lawyer was charging 725 an hour, and, in fact,

10 the bill is being paid by Halliburton.

11          However, in Mr. Peterson's deposition, they

12 contended the conversations that took place between

13 Mr. Peterson and the Halliburton lawyers were attorney-client

14 privileged and would not let the witness answer the questions.

15          I could go on, but all I know, Your Honor, is we

16 had an agreement for 14 hours.  Mr. Hurley and I talked.  It is

17 an agreement.  He wrote another e-mail Wednesday before

18 Thanksgiving.  We agreed to split it 12 and two.  That is where

19 we have always been.  I'm prepared to take my file down to the

20 courthouse and show it to the judge in camera.  You can look at

21 my outline for the deposition.  You can look at the material I

22 intend to use, and the Court can make a determination of

23 whether or not what we intend to do is in any way not

24 necessary.  I'm that confident I can show the Court.

25          What I don't want to do is have a ruling contrary

 1   to our agreement, contrary to our understanding since

 2   September, of the, A, other than the 12 and two that we have

 3   agreed to today, because of an incomplete record, I have -- I

 4   think I have a duty to my client.  This was a voluntary notice.

 5   I'm willing to withdraw the notice, if that's what they want us

 6   to do, and come down to the Court for the hearing.  I will come

 7   to your courtroom and show you the documents and the material

 8   that we have.  But I would ask that our agreement be enforced.

 9            Mr. Hurley, I think, will agree he sent out an

10   e-mail on Wednesday before Thanksgiving.  We have a 12 and two

11   agreement.  The only issue that we have right now is the issue

12   Mr. Fibich raised on reserving enough time to conduct a

13   recross, if they intend to do direct.

14            If there is any other issue on the table, Your

15   Honor, I will withdraw the voluntary notice and agreed notice

16   and we can bring it up.  I thought we had an agreement.  We

17   have the evidence right here of an agreement that we have, but

18   I don't want a ruling made contrary to 12 and two today.  If it

19   is, we will just pull the notice and come down to the

20   courthouse.

21       MR. FIBICH:  This is Tommy Fibich.  I don't want to do

22   that, although I understand Scott's position.  And quite

23   frankly, I support it.  Your Honor, here is the deal that we

24   have.  The Smith-Idol case was filed sometime after our cases.

25   Toby Cole is on the call, and he is more than capable of

1   speaking for himself.  We do not speak for Smith-Idol.

2                 We never had an agreement that our time was going

3   to be divided by Smith-Idol.  However, as the Court knows, he

4   benefits and his client benefits and the Court's management of

5   discovery benefits by us going forward as we have agreed to.

6                 If we are allowed to go forward, as we think we

7   should be by virtue of the written agreement that we have with

8   the Halliburton lawyers and get our discovery done and our

9   deposition done, that leaves very little for Mr. Cole to have

10  to do at some later deposition, if one is even warranted.

11                So, you know, once again, the issue is simple.

12  We are ready to start this deposition in two days.  This issue

13  has never been brought up before, you know, last week when

14  Scott was on his way out of town for Thanksgiving with his

15  family.

16                All we're asking the Court to do is enforce the

17  agreement, let us go forward and have time to reserve after

18  they do their trial direct on this witness.

19                THE COURT:  Mr. Fibich, are you asking for additional

20  time beyond the 12 hours, the 12 and two?

21                MR. FIBICH:  No, sir.

22                THE COURT:  You want the standard -- the agreement

23  that you say was in place, 12 hours and two hours for them do a

24  direct; is that right?

25                MR. FIBICH:  That's exactly right.  We want to reserve

1   some of our 12 for after they finish with their direct.  And

2   quite frankly, Your Honor, there are a lot of witnesses who are

3   going to be deposed.  This is likely the only witness that we

4   are going to need two days with, other than the one we have

5   already taken.  So it is not like we are out here asking for

6   something that hasn't already been agreed to.

7            MR. ALLEN:  Your Honor, this is Scott Allen again.  I

8   told the Court -- I told counsel -- I think they will speak up

9   and say this:  I told the Court at the hearing -- I think it

10  was September 24th; it is on the record -- we had two witnesses

11  that we thought needed two days.  That was Craig Peterson, who

12  is the head of the whole operation, and Mr. Keith Richards, who

13  is the head of TTM, Theater Transportation Mission, which all

14  of our clients were working for and is the largest mission of

15  the LOGCAP contract.  I can represent to the Court that these

16  will be the only two witnesses I can think of off the top of my

17  head right now that require two days.  I have said that

18  repeatedly, and this was agreed to.

19           MR. WARNECKE:  Your Honor, this is Mike Warnecke for

20  Keith Richards again.  The allegation that this was just raised

21  last week is not true.  On October 17, I sent a letter to all

22  plaintiffs' counsel stating that in my understanding that in

23  light of Judge Miller's consolidation, Smith-Idol and the

24  companion cases, companion cases being Fisher and Lane, for the

25  purposes of discovery, Mr. Richards's appearance for deposition

1    on December 4 will satisfy its obligations to all parties in

2    all three cases including those at Smith-Idol.

3              If you have any questions specific to the

4    Smith-Idol matter, Mr. Richards is being offered for such

5    questions during his December 4, 5, 2008 deposition.

6              THE COURT:  Mr. Cole?

7              MR. COLE:  Yes, sir.

8              THE COURT:  Why are you planning not to attend the

9    deposition?

10             MR. COLE:  Judge, you know, we agreed that we would

11   participate and then -- you know, we agreed that we would

12   participate in the deposition to the extent that we could.  We

13   are playing catch-up with all these documents.  Our case is two

14   years behind the other one.

15             And so we got the letter, the second letter from

16   Mr. Warnecke that said, "Look, you guys are all consolidated.

17   This is all the time you are going to get with my client."

18             I tried to discuss with him working out something

19   else but in light of -- there is no way that we can just let

20   Mr. Allen take our deposition for us.  There is no time

21   allotted for us.  And so we pulled out our notice and said that

22   we would be glad to go after our discovery production and we

23   will see what discovery we need later.  We may never need his

24   deposition testimony.  Mr. Allen may be so thorough, it is just

25   not an issue.  We don't know that at this time.  We won't know

1  that when we're up there, so giving us a limited amount of time

2  wasn't fair to our case.

3      MR. MEADOWS:  This is Bobby Meadows.  Just a couple

4  general statements:  We essentially see this the same way the

5  plaintiffs do.  That is, there was an agreement.  We want to

6  proceed with the deposition.  We don't want to pull it down.

7  There is a question about how we handle the rebuttal issue and

8  so forth.  But Mr. Hurley can speak more directly to those

9  issues if I'm off base on any of that.  We really want to get

10  this over with.  Everybody is focused on it.  And as I said

11  when this whole issue came up in the very first hearing in

12  terms of consolidation for discovery, we should not be --

13  whether they are employees or other significant witnesses,

14  these witnesses and these depositions should not be repeated.

15      And our concern here is that whether or not there

16  is -- I think what you called for was a good faith full effort

17  by the Smith-Idol party to participate in this discovery so

18  that we weren't going to be in a situation where we were going

19  to have to repeat discovery that could have been accomplished

20  in one event.  That's where we are.  That is what I think we

21  would like to see happen.

22      I take Toby at his word that he is going to

23  examine what happened and maybe he will be satisfied that the

24  examination is complete.  But I think he ought to be there, he

25  ought to be working with plaintiffs' counsel.  I think there

1    should be a full effort to make sure that there is one

2    deposition of this gentleman and we move on from there.

3

4         MR. FIBICH:  Judge, I'm Tommy Fibich.  However, I do

5    want to point out Toby Cole's facts are different than our

6    facts, and, you know, whether he should be there or not be

7    there, I think that ought to be his determination.  We welcome

8    whatever help he can give us, but he has a different case than

9    our cases.

10         MR. COLE:  Judge, this is Toby again.  I don't mind

11   going there.  I don't mind having someone from my office being

12   there.  I just don't want that to prejudice our right to be

13   able to actually take the deposition when we are prepared to do

14   so.  I will be glad to have somebody there or be there myself

15   so I don't have to watch it on video.  I don't want you to say,

16   "Well, you were there, Toby, and you participated."

17         THE COURT:  Well, I think it would be useful if you

18   were there, and I'm going to say this.  I do -- when we

19   consolidated these cases for purposes of discovery, the plan

20   was that these witnesses would not be presented repetitively in

21   the different cases, that they would be presented one time, and

22   that all of the lawyers would participate in the examination,

23   so I would suggest that you be there and I would say that if

24   you later come to me and want to redepose this witness, you

25   better have a really, really good reason to do that.

1          MR. COLE:  Okay.

2          MR. HURLEY:  Judge, this is Bruce Hurley.  Scott and I

3     have had at least one, I think, two agreements, but we

4     definitely had a misunderstanding to begin with, but we have

5     worked out this 12 and two issue.  And I don't want Scott to

6     pull down the deposition notice.  The defendants want Keith

7     Richards's deposition to go forward.  We want to avoid

8     duplication of it given the fact that Mr. Richards has

9     volunteered to do two days.

10          MR. WARNECKE:  Your Honor, this is Mike Warnecke

11     again.  We also want this deposition to go forward and be done

12     with, but that's just it.  We want it to be done with.  We

13     think giving 14 hours for three cases is more than what they

14     would be allowed to under the rules and more than adequate to

15     take discovery in three matters, even if there's a claim that

16     they are not identical, they are substantially overlapping, at

17     least as it concerns my client.

18          THE COURT:  I understand your position and I

19     sympathize with it, but I am authorized to modify the rules as

20     necessary for specific cases, and this is an important witness

21     clearly, so I would like him to only be presented one time.

22               Are you planning any division between Fisher and

23     Lane on the 12 hours?

24          MR. FIBICH:  Judge, I think Scott Allen and I can work

25     that out.  The bigger issue is whether we can reserve time

1    after the direct that they do.  That's the issue that I think

2    we would like to toss on.

3          THE COURT:  I don't see any reason why you guys can't

4    work that out procedurally so long as it doesn't go, you know,

5    beyond your total of 12 hours.  If they want to -- if they want

6    to start with a direct examination of two hours, then you can

7    do your 12 after that.  Or if you want to ask him some

8    questions for six hours and then they want to do a two-hour

9    direct, then you have got another six hours after that.

10          MR. FIBICH:  I understand, Your Honor.

11          THE COURT:  Did you miss my point?  Okay.  Fine.

12          MR. COLE:  Judge, just to clarify, does my time have

13    to be put in that 12 hour time, as well?

14          THE COURT:  Yes.  Mr. Cole, yes.

15            All right.  Anything else?  I do have a jury

16    coming in at 10:00 to get started in a criminal case, so let's,

17    if we can, wrap this up.

18          MR. ALLEN:  Yes, sir.  This is Scott Allen.  I guess

19    on the next issue of Mr. Peterson's deposition, I think they're

20    in the process of talking to Mr. Hurley.  We can see if we can

21    reach agreements.  If we can't, we will just call you back --

22    that would be best -- to avoid any lengthy time, if that is

23    okay.

24          THE COURT:  That's fine.

25          MR. ALLEN:  The next issue, Your Honor, the e-mail

```
 1    timing -- I only bring this up -- there have been some
 2    glitches.  Again, Mr. Kasanow and I are working them out.  The
 3    issue is still there.  We are trying to work them out.  That's
 4    all I wanted to tell you.
 5            THE COURT:  Good.  Just don't explain the details to
 6    me.
 7            MR. ALLEN:  This issue number five on my letter, the
 8    need for contact information?
 9            THE COURT:  Right.
10            MR. ALLEN:  The long and the short of it, Your Honor,
11    they have written me letters -- I think three letters; it
12    doesn't matter -- saying they will present the following
13    witness.  They being the defendant.  They list the people they
14    are going to agree to present.
15            Even with that, Your Honor, I believe I'm
16    entitled to the contact information, the name, address,
17    telephone number, the normal contact information of persons
18    with knowledge of relevant facts because some of the people I
19    know that they are agreeing to present are not employees of the
20    company, are no longer employees or not employees.
21            Be that as it may, I'm simply under the rules and
22    under the procedure entitled to the contact information for
23    these witnesses, so that I can, for example, issue subpoenas if
24    need be for the time of trial.
25            In Mr. Peterson's deposition, I asked for his
```

1    contact information on the record.  They refused to give it to

2    me.  I don't want to argue about it.  I said, "We can talk

3    about it later."

4              All I'm asking for is the list of witnesses that

5    they have, the contact information.  I think I'm entitled to it

6    and I would like to have it.

7              THE COURT:  Mr. Hurley?

8              MR. HURLEY:  I think a couple concerns, Judge, first,

9    we have told Mr. Allen that a number of these people, while

10   they are former employees, have asked our collective firms to

11   represent them for the purposes of their depositions and in

12   this case.  And in doing so, I think, I feel confident that I

13   have told Scott that we would accept service for any of them

14   and responsibility that goes along with accepting that if the

15   witnesses do not appear.

16             Also, Judge, a concern is contact with the

17   witnesses if they are, in fact, requesting our representation

18   of them.  And so those are the two kind of overriding issues

19   that relate to the disclosure of contact information.

20             THE COURT:  All right.  I think he is entitled to

21   contact information, but if you have witnesses that are

22   currently employed by your companies or who have asked you to

23   represent them and agreed that you can accept a trial subpoena

24   for them, then I think the contact information would be care of

25   you.  For any others who are not employees or who have not

1  requested you to represent them, their contact information

2  should be provided.

3       MR. HURLEY:  Judge, did you mean by employees, that to

4  include former employees, as well, who have asked us to

5  represent them?

6       THE COURT:  Yes.  Former employees who have asked you

7  to represent them, current employees and anybody else beyond

8  that, the contact information I think is clearly discoverable

9  and the plaintiffs are entitled to it.

10      MR. ALLEN:  Yes, Your Honor, Scott Allen.  I know you

11 have a jury trial fixing to start.  I don't even have that.

12 They just gave me a list and said, "We will present them."

13       If they are going to say they represent the

14 witness, they need to go through the witness list and say, "We

15 represent them.  We are their attorney.  This is how you can

16 contact them."

17       I do believe, Your Honor, quite frankly, for

18 nonemployee witnesses they represent, they need to make that

19 statement.  That is something very important.  I don't even

20 have that so far.  All I have is a list:  These are who we are

21 going to present.

22       There are very few they say they gave contact

23 information on.  I need a clear statement for -- I'm sorry if I

24 misstated the number -- 32 or 33 witnesses that they provided.

25 We represent them.  This is the address.  We will accept the

1   trial subpoena or we don't represent them, if they are employed

2   or not employed.  I don't even have a list of who is currently

3   employed or who is not currently employed.  I have none of

4   that.

5          THE COURT:  Well, Mr. Hurley, would you update that

6   for Mr. Allen, please?

7          MR. HURLEY:  I will, Judge.  I do think Scott has got

8   some of the stuff he says he doesn't, but I will absolutely

9   make sure he gets that information.

10          THE COURT:  Good.  Now, is there anything else?

11          MR. HURLEY:  Judge, I know that we, the defendants,

12   have an issue in the Smith-Idol case about the protective

13   order, but I understand you have got a jury waiting for you,

14   maybe we can get that heard at a different time.

15          THE COURT:  Is there any outstanding discovery due to

16   you in the Smith-Idol case at this point?

17          MR. HURLEY:  There is not, Your Honor.

18          THE COURT:  All right.  Unless you want to raise it

19   sooner, let's defer it to the next status conference.

20          MR. HURLEY:  If we need to raise it sooner, we will

21   get with your coordinator and find a date.

22          THE COURT:  Perfect.  Thank you.  Everybody have a

23   good holiday.  Thank you.

24          MR. ALLEN:  Thanks, Judge.

25          MR. HURLEY:  Thank you, Judge.

1      MR. FIBICH:  Thanks, Judge.

2      *(Proceedings concluded)*

3                              * * * *
       I certify that the foregoing is a correct transcript from
4   the record of proceedings in the above-entitled cause.

5   Date: December 18, 2008

6
                          /s/ *Mayra Malone*
7                          Mayra Malone, CSR, RMR, CRR
                           Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25